IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DARRELL LYNN HENDERSON,          :
                                 :
              Petitioner,        :
v.                               :    CRIMINAL NO. 07-00067-CG-B
                                 :    CIVIL ACTION NO. 08-00516-CG-B
UNITED STATES OF AMERICA,        :
                                 :
              Respondent.        :

## REPORT AND RECOMMENDATION

Pending before the Court is Petitioner Darrell Lynn
Henderson's Motion to Vacate, Set Aside, or Correct Sentence under
28 U.S.C. § 2255 (Doc. 38), Respondent's Motion to Dismiss the
motion to vacate (Doc. 43), and Petitioner's reply thereto. (Doc.
44). This action was referred to the undersigned Magistrate Judge
for report and recommendation pursuant to 28 U.S.C. § 636(b) and
Rule 8(b) of the Rules Governing Section 2255 Cases.[1]  It is now
ready for consideration. Having conducted an evidentiary hearing
on May 6, 2010, and having carefully reviewed the record, it is
recommended that Petitioner's Motion to Vacate, Set Aside, or

---

[1] The Honorable United States District Judge Callie V.S.
Granade presided over the guilty plea proceedings in this action
and imposed the challenged sentence. On September 5, 2008, Judge
Granade referred the matter to the undersigned Magistrate Judge
for entry of a Report and Recommendation. The undersigned has
reviewed the Petitioner's motion and related documents, the
transcripts of the guilty plea hearing and sentencing hearing,
and all other relevant documents in the Court's file and has
fully familiarized herself with the proceedings before Judge
Granade. Based upon that review and the evidence presented at
the evidentiary hearing conducted on May 6, 2010, the undersigned
makes the following report and recommendation.

Correct Sentence under 28 U.S.C. § 2255 (Doc. 38) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Darrell Lynn Henderson.

## I. BACKGROUND

On March 29, 2007, Henderson was indicted for violating 18 U.S.C. § 922(g)(1), "Prohibited Person in Possession of a Firearm" (Count One), and 26 U.S.C. § 5861(d), "Possession of an Unregistered Firearm" (Count Two). (Doc. 1; Doc. 1 att. 1). On April 18, 2007, the Court appointed Federal Public Defender, Peter J. Madden, to represent Henderson. (Doc. 7).

Pursuant to a plea agreement with the Government, Henderson pled guilty on May 15, 2007, to Count One of the indictment. (Doc. 17). At Henderson's sentencing hearing, which was conducted on August 20, 2007, Judge Granade sentenced him to 110 months in prison, to run concurrently with the state sentence that Henderson was already serving, three years of supervised release following his release from prison, and an assessment of one hundred dollars. (Doc. 23 at 1-5; Doc. 42 at 28-29). Judge Granade specified that the sentence was to run "concurrent from this day forward *but not retroactive*." (Doc. 42 at 28) (emphasis added). The Court dismissed Count Two of the indictment. (Id. at 31).

On September 11, 2007, Judge Granade entered a written judgment on Henderson's sentence and included the following

recommendations:

> The court makes the following recommendations
> to the Bureau of Prisons: That this sentence
> run concurrently with the state sentence the
> defendant is currently serving from this day
> forward; *that there be credit for the time he
> has already served;* and that the defendant be
> imprisoned at an institution where a
> residential, comprehensive, substance abuse
> treatment program is available.

(Doc. 23 at 2) (emphasis added). On September 21, 2007, Madden filed a notice of appeal on Henderson's behalf.(Doc. 24). On September 25, 2007, Judge Granade amended the written judgment of September 11, 2007, *nunc pro tunc*, to correct the provision regarding credit for time served. The amended order provided:

> The court makes the following recommendations
> to the Bureau of Prisons: That this sentence
> run concurrently with the state sentence the
> defendant is currently serving from this day
> forward; *that there be no credit for the time
> he has already served;* and that the defendant
> be imprisoned at an institution where a
> residential, comprehensive, substance abuse
> treatment program is available.

(Doc. 26 at 1) (emphasis added).

On October 8, 2007, Henderson met with his attorney, Madden, at the Perry County Correctional Facility. (Doc. 50, att. 1 at 3). Following this meeting, Madden returned to his office and spoke to Kristen Gartman Rogers, the Federal Public Defender who handles appeals, and together they filed a motion to dismiss Henderson's appeal. (Id.). On October 16, 2007, the Eleventh Circuit Court of Appeals dismissed Henderson's appeal pursuant to his motion to

dismiss. (Doc. 29).

On September 5, 2008, Henderson filed his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, and raised the following two claims: (1) Petitioner was improperly denied credit on his sentence for time served; and (2) Petitioner's counsel was ineffective for dismissing his direct appeal.[2] (Doc. 38 at 4-5). On October 15, 2008, Respondent filed a Motion to Dismiss arguing that Henderson's claims are barred from review because he waived them in his plea agreement. (Doc. 43 at 1).

In an Order dated February 11, 2010, the Court directed Respondent to supplement its submission and specifically address Henderson's ineffective assistance of counsel claim. (Doc. 48). Respondent filed its supplemental submission on March 2, 2010. (Doc. 50). The Court conducted an evidentiary hearing on Henderson's ineffective assistance of counsel claim on May 6, 2010.

The Court now considers each of Henderson's claims in turn.

## II. DISCUSSION

A. Claim One: Denial of Credit for Time Served.

As discussed above, Henderson argues in his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 that he was

---

[2] While not well pled, the Court construes Grounds Two and Three in Henderson's Motion to Vacate as one claim for ineffective assistance of counsel related to counsel's failure to pursue Petitioner's appeal after the Court amended its judgment on September 25, 2007, and disallowed credit for time served. (Doc. 38 at 4-5).

improperly denied credit on his sentence for time served (Claim One). (Doc. 38 at 4). Respondent counters that Claim One is barred from collateral review because Henderson waived his right to post-conviction review of this claim in his plea agreement. (Doc. 43 at 1).

The Eleventh Circuit Court of Appeals has held that "where it is clear from the plea agreement and the Rule 11 colloquy, or from some other part of the record, that the defendant knowingly and voluntarily entered into a sentence appeal waiver, that waiver should be enforced. . . ." United States v. Bascomb, 451 F.3d 1292, 1294 (11th Cir. 2006); see also United States v. Bushert, 997 F.2d 1343, 1351 (11th Cir. 1993). The "core concern" for the Court in this analysis is "the defendant's knowledge and understanding of the sentence appeal waiver." Bushert, 997 F.2d at 1351.

> For a sentence appeal waiver to be enforced, "[t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." Id. at 1351. "A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues-indeed, it includes a waiver of the right to appeal blatant error." United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999). "Waiver would be nearly meaningless if it included only those appeals that border on the frivolous." Id.

Brown v. U.S., 256 Fed. Appx. 258, 261-62 (11th Cir. 2007)

(unpublished)[3] (holding that Petitioner's right to collateral review was waived by sentence appeal waiver in plea agreement).

Court documents show that Henderson entered into a plea agreement which was filed with the Court on May 15, 2007. (Doc. 17). Henderson's plea agreement includes a waiver of his right to directly appeal his sentence, as well as a waiver of his right to a post-conviction proceeding or collateral attack of his sentence (including but not limited to a motion brought under 28 U.S.C. § 2255), except in limited circumstances. (Id. at 9-10). Specifically, in the section of the Agreement entitled "Limited Waiver of Right to Appeal Sentence," Henderson agreed to the following:

> 19. The defendant acknowledges that he is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. In exchange for the recommendations made by the United States in this Plea Agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence imposed in this case.
>
> 20. With the limited exceptions noted below, the defendant also waives his right to challenge any sentence so imposed, or the manner in which it was determined, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.
>
> 21. The defendant reserves the right to

---

[3] "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 865 n.5 (11th Cir. 2007) (unpublished).

> contest in an appeal or post-conviction proceeding any of the following:
>
>> a.  Any punishment imposed in excess of the statutory maximum;
>>
>> b.  Any punishment that constitutes an upward departure from the guideline range; or
>>
>> c.  A claim of ineffective assistance of counsel.
>
> 22.  In addition, the defendant reserves the right to petition the Court for resentencing pursuant to 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the defendant's sentence.

(<u>Id.</u>).

In the guilty plea hearing conducted on May 15, 2007, Henderson appeared before Judge Granade and stated that he was not "currently under the influence of any drug, medication, or alcoholic beverage of any kind." (Doc. 41 at 4). Henderson also affirmed that he was fully satisfied with the counsel of his attorney, Madden, who was appearing with him in Court at that time. (<u>Id.</u> at 5). Henderson stated that he had been given the opportunity to read and discuss the plea agreement with his attorney before he signed it; he understood the terms therein; and further understood that those terms were merely a recommendation to the Court and that the Court could impose a sentence that was "more severe than [Petitioner] might anticipate;" he further stated that he was "pleading guilty of [his] own free will because [he was]

guilty." (Id. at 5-6, 10). In addition, the following exchange
took place between Judge Granade and Henderson:

> THE COURT: Do you also understand that
> under some circumstances you or the
> government may have the right to appeal any
> sentence that I impose; however, Mr.
> Henderson, in your plea agreement you have
> limited your right to appeal the sentence
> itself because you have retained only the
> right to appeal the sentence if punishment is
> imposed in excess of the statutory maximum,
> if punishment is imposed that constitutes an
> upward departure from the guideline range, or
> if you have a claim of ineffective assistance
> of counsel. Do you understand that you have
> waived your right to appeal the sentence
> itself in all but those three circumstances?
>
> DEFENDANT HENDERSON: Yes, ma'am.
>
> THE COURT: All right. . . .

(Id. at 14).

"There is a strong presumption that the statements made during
the [plea] colloquy are true." United States v. Medlock, 12 F.3d
185, 187 (11th Cir. 1994). "[W]hen a defendant makes statements
under oath at a plea colloquy, he bears a heavy burden to show his
statements were false." United States v. Rogers, 848 F.2d 166, 168
(11th Cir. 1988).

The Court finds that Henderson entered into the plea
agreement, and the sentence appeal waiver contained therein, both
knowingly and voluntarily. Indeed, Henderson makes no argument to
the contrary. (Docs. 38, 44). Based on the express terms of the
sentence appeal waiver contained in Henderson's plea agreement, the
Court finds that he waived any right to collateral review of his

claim that the Court improperly denied him credit on his sentence for time served. Because this claim does not fall within any of the three exceptions to the waiver, the sentence appeal waiver is due to be enforced, and Claim One is due to be denied.

B. <u>Claim Two: Ineffective Assistance of Counsel</u>.

Henderson next argues in his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 that his counsel was ineffective for filing a motion to dismiss Henderson's direct appeal (Claim Two). (Doc. 38 at 4-5). Specifically, Henderson claims that his attorney, Madden, filed a motion to dismiss his appeal without informing him that he was not getting credit on his sentence for time served. Henderson argues that he would not have agreed to voluntarily dismiss his appeal if he had been aware of that fact. (<u>Id.</u>; Doc. 44 at 2-4).

> A claim of ineffective assistance of counsel requires both objectively unreasonable performance and prejudice to the petitioner from that deficient performance. <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 476-77 (2000). "We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." <u>Id.</u> at 477. Moreover, "when counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit." <u>Id.</u> (internal quotes omitted). In other words, "[p]rejudice is presumed." <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, 790 (11th Cir. 2005).

> The same principles apply even when the petitioner, as here, has signed a partial appeal waiver. "If the evidence establishes

. . . that Petitioner's attorney acted
contrary to his client's wishes, . . .
prejudice is presumed, and Petitioner is
entitled to an out-of-time appeal, regardless
of whether he can identify any arguably
meritorious grounds for appeal that would fit
one of the exceptions contained in his appeal
waiver." <u>Gomez-Diaz</u>, 433 F.3d at 793.

. . . Even if no request to appeal is made,
counsel is obligated to consult with his
client if either "a rational defendant would
want to appeal" or the client has "reasonably
demonstrated to counsel that he [i]s
interested in appealing." <u>Flores-Ortega</u>, 528
U.S. at 479.  To satisfy the consultation
obligation when it arises, counsel must
"advis[e] the defendant about the advantages
and disadvantages of taking an appeal and
mak[e] a reasonable effort to discover the
defendant's wishes." <u>Id.</u> at 478.  If counsel
has a duty to consult but fails to satisfy
it, his deficient performance is established,
and the defendant establishes resulting
prejudice by showing that, but for counsel's
failure to consult, he would have appealed.
<u>Gomez-Diaz</u>, 433 F.3d at 792.

Relevant factors in determining if a
rational defendant would want to appeal
include: (1) "whether the conviction follows
a guilty plea"; (2) "whether the defendant
received the sentence he bargained for"; (3)
"whether the plea [agreement] expressly . . .
waived some or all appeal rights"; and (4)
whether there are "nonfrivolous grounds for
appeal." <u>Otero v. United States</u>, 499 F.3d
1267, 1270-71 (11th Cir. 2007) (internal
quotes omitted).

<u>Gavin v. U.S.</u>, 2009 WL 692046, *1-2 (S.D. Ala. 2009).

It is undisputed by the parties that following the sentencing

hearing on August 20, 2007, Henderson instructed his counsel to

file an appeal, and Madden complied with Henderson's instructions

and filed a timely notice of appeal on September 21, 2007.  (Doc.

24; Doc. 50, att. 1 at 2). However, after meeting with Henderson at the Perry County Correctional Facility on October 8, 2007, Madden filed a motion to dismiss the appeal, and the Eleventh Circuit issued an entry of dismissal on October 16, 2007. (Doc. 50, att. 1 at 9; Doc. 29). Because the events surrounding the dismissal are in conflict, the Court conducted an evidentiary hearing on May 6, 2010.

At the evidentiary hearing, Madden testified that he went to the Perry County Correctional Facility on October 8, 2007, to talk to Henderson about his appeal. Madden testified that Henderson was not satisfied with his sentence. Although Henderson's sentence was at the low end of the guidelines, it was higher than Henderson expected because the Court did not give him credit for acceptance of responsibility, and the Government failed to file a motion for a 5K1.1 downward departure for his cooperation.[4] Madden discussed with Henderson the advantages and disadvantages of appealing, and his belief that an appeal would be futile since Henderson had signed an appeal waiver. Madden also shared with Henderson the fact that there was still the possibility that Henderson could receive a Rule 35 reduction of sentence.[5] Madden testified that he had

---

[4] Section 5K1.1 of the United States Sentencing Guidelines provides: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

[5] Rule 35 of the Federal Rules of Criminal Procedure provides that, upon the Government's motion, the court may reduce

spoken with the assistant United States Attorney who was handling the drug cases in which Henderson had provided information, and was told that a Rule 35 motion was possible if Henderson was called to testify in any of the cases. Madden testified that the Rule 35 reduction could reduce Henderson's sentence by as much as fifty percent; however, he explained to Henderson that he could not have it both ways. In other words, Henderson could not fight the Government on appeal and yet at the same time ask the Government for a favor (by way of a Rule 35 motion).[6] Madden stressed to Henderson that because he had received a low end guideline sentence and had signed an appeal waiver, he had virtually no chance of getting any relief on appeal. His "only shot" at relief from his sentence was a Rule 35 reduction. Accordingly, Madden advised Henderson to dismiss the appeal and hope for a Rule 35 motion from the Government.

_____

a sentence if the defendant, after sentencing, "provided substantial assistance in investigating or prosecuting another person."

[6] Madden testified that he explained to Henderson that he had a choice to make -- appeal or pursue a Rule 35 reduction. According to Madden, the local United States Attorneys Office has a practice/policy whereby they will not consider a Rule 35 motion if a defendant has failed to abide by the terms of an appeal waiver and proceeded with an appeal. Madden reasoned that if Henderson dismissed the appeal, a Rule 35 motion was still possible. Madden believed that Henderson had a "real good chance" of getting a Rule 35 reduction due to the nature and extent of his cooperation. According to Madden, Henderson had given truthful information that was relied on by the Government, and he expected that Henderson would be called upon to testify in other cases.

Madden further testified that at his October 8, 2007 meeting with Henderson, he discussed with him the Court's written sentencing orders. Madden explained to Henderson that the Court's initial written judgment had contained an error because it gave him credit for time served, but that error had been corrected.[7] According to Madden, at no time during their discussion did Henderson ask him to pursue the appeal on the ground that he was improperly denied jail credit or for any other reason. Upon leaving the facility, Madden was confident that Henderson knew he was not getting credit for time served, understood Madden's rationale and advice regarding the appeal, and agreed that the appeal should be dismissed. Madden testified that, had Henderson expressed his desire to persist in the appeal for any reason, he would have gone forward with it; however, that was not the case.[8] According to Madden, approximately seven months after the October 2007 meeting, Henderson complained to Madden that he did not wish to dismiss his appeal. Madden informed him that it was too late, and suggested

_____

[7] Madden could not recall if he gave Henderson copies of the written sentencing orders; however, he was confident that he shared the contents of the orders with Henderson.

[8] As discussed above, after his meeting with Henderson on October 8, 2007, Madden returned to his office and discussed the case with Kristen Rogers, the Federal Defender who handles appeals. Rogers wrote Henderson a letter explaining that there were no grounds for appeal and that she understood that, after consulting with counsel, he had agreed to dismiss the appeal; therefore, she had filed a motion to dismiss the appeal. Rogers also invited Henderson to contact her if he had any questions. (Doc. 50, att. 1 at 6). He did not do so.

that a rule 2255 motion was his best option at that point.

Henderson offered a different version of the facts at the evidentiary hearing. Henderson testified that he recalls Judge Granade stating, at his sentencing hearing, that his federal sentence would run "concurrent" with his state sentence; however, he had no recollection of her saying that it would not be "retroactive"[9], or that he would *not* receive credit for time already served.

Henderson confirmed that Madden visited him at the Perry County Correctional Facility on October 8, 2007 to discuss his appeal. According to Henderson, Madden showed him a copy of the Court's initial sentencing order dated September 11, 2007, which gave him credit for time served, but he did not show him a copy of the amended order dated September 25, 2007, which provided that he would *not* receive credit on his federal sentence for time served. Henderson testified that Madden assured him that he was getting credit for time served and suggested that they "not open a can of worms" by going forward with the appeal. Henderson took this to mean that he could end up with a longer sentence if he appealed. Henderson also testified that at that point, he was under the impression that he was not going to receive a downward departure for the assistance he provided in other cases. Henderson testified

---

[9] As discussed above, the record shows that during the sentencing hearing, Judge Granade stated that Henderson's sentence would run "concurrent from this day forward *but not retroactive*." (Doc. 42 at 28) (emphasis added).

that while he authorized Madden to dismiss the appeal, he would not have done so if Madden had told him that he was not getting credit for time served. According to Henderson, he first learned about the amended order denying him credit for time served a few weeks after his October meeting with Madden, when he received a copy of the amended order in the mail from the court. Henderson testified that he wrote Madden at that time and asked him "why did you do that to me"?

In this case, the parties agree that Henderson authorized Madden to dismiss the appeal. The dispute centers on the circumstances under which Henderson authorized the dismissal. As noted supra, Henderson contends that he would not have authorized the dismissal had he been informed that he was not getting credit for time served. Madden, on the other hand, contends that Henderson was aware that he was not getting credit for time served, and that he authorized the dismissal based on the hope that the Government would file a Rule 35 motion to substantially reduce Henderson's sentence. During the evidentiary hearing, the undersigned had a full opportunity to observe the demeanor of both Madden and Henderson, and to make the necessary credibility determinations. To the extent that the testimony of Henderson and Madden cannot be reconciled on the issue in dispute, the Court finds that Henderson's testimony, where it differs in material respects from Madden's testimony, is not credible.

Specifically, the Court finds that during the October 8, 2007

meeting, Madden advised Henderson of the two sentencing orders and confirmed that Henderson would not receive credit for time served, that Madden discussed with Henderson the pros and cons of going forward with his appeal, and that Henderson authorized Madden to dismiss the appeal.  First of all, Madden's testimony regarding his discussion with Henderson of the two sentencing orders was consistent and straightforward.  While Madden could not recall whether he showed Henderson copies of the orders, he was emphatic that he told him that the initial sentencing order contained a clerical error, and that the amended order corrected the error and conformed to Judge Granade's pronouncement at the sentencing hearing that Henderson would *not* receive credit for time served. Madden's testimony in this regard was also consistent with the fact that the error in the initial written sentencing order was corrected nearly two weeks prior to Madden's October 8th meeting with Henderson.  This lends credence to Madden's testimony that he was aware of the correction and that he shared this information with Henderson when they met.[10]  Additionally, Henderson has not

_____

[10] Moreover, even if one assumes, although it is not borne out by the record, that Madden was not aware of the amended sentencing order at the time that he met with Henderson, the original order was internally inconsistent because on the one hand, it indicates that the federal sentence would run concurrent "from this day forward", yet on the other hand, it states that there would be credit for time served.  Given this internal inconsistency, and the fact that Judge Granade pronounced at sentencing that she was not giving Henderson credit for time served, Henderson's assertion that Madden was adamant that Henderson was to receive credit for time served is simply not plausible.

suggested, nor does the record reveal, any motivation that Madden would have had for suppressing this information from Henderson.

Second, Madden's testimony that he advised Henderson that it was in his best interest to dismiss the appeal so as not to jeopardize his chance of receiving a Rule 35 reduction and that Henderson agreed with his advice was consistent with the fact that Henderson had signed an appeal waiver, rendering his appeal essentially hopeless.[11] Madden's testimony was also consistent with the fact that at that juncture, Madden was involved in on-going discussions with the United States Attorneys Office in an effort to secure a Rule 35 reduction based on Henderson's cooperation in other cases, and proceeding with the appeal placed any chance of a Rule 35 reduction in jeopardy.

Conversely, the Court finds that Henderson's testimony about when he first learned that he was not getting credit for time served was not plausible. At the evidentiary hearing, Henderson testified that he learned for the first time that he would not be getting credit for time served when he received a copy of the amended sentencing order from the court "a few weeks" after his October 8th meeting with Madden and, in response, he wrote Madden

---

[11] As discussed above, Henderson's plea agreement included a waiver of his right to challenge, directly or collaterally, any sentence imposed in his case, except in the event of punishment imposed in excess of the statutory maximum, punishment that constituted an upward departure from the guideline range, or a claim of ineffective assistance of counsel. (Doc. 17 at 10). There is no evidence that any of these exceptions applied to Henderson's appeal.

a letter demanding to know why he dismissed his appeal.[12]  However, in court documents filed in this action, Henderson implies that he first discovered that he was not getting credit for time served when he received a copy of the amended order from the court some time around March 17, 2008.  (Doc. 44 at 3; Doc. 30).  If that is true, it is inconsistent with Henderson's testimony at the evidentiary hearing that he learned this information in late October, 2007.

Moreover, the undersigned finds telling the fact that in Henderson's written communications to the Court following his sentencing, he does not question why the original order was amended; he does not assert that he thought he was to receive credit for time served; nor does he contend that he would not have dismissed his appeal if he had known that he was not getting credit for time served. (Docs. 30, 31, 32, 33).  At most, Henderson appears to question what will happen once he completes his state sentence.  Even after the Clerk provides Henderson with a copy of the amended sentencing order, and advises that his federal sentence will run concurrently with his state sentence from September 25, 2007, with no credit for time already served (Doc. 30-1), in his follow-up correspondence to the Court, Henderson does not assert

_____

[12] Henderson testified that he wrote Madden and asked, "why did you do that to me?"  The record contains two letters that Henderson wrote Madden, one dated May 5, 2008, and one dated August 28, 2008.  (Doc. 50, att. 1 at 13-15).  Neither letter contains this statement.

that he was led to believe that he would be getting credit for time served, nor does he question why he is not being given credit for time served[13]. Henderson's response to the news that his credit for time served had been taken away and his failure to even mention this issue in motions filed with the Court immediately following the receipt of that information is far more suggestive of a prior understanding that he was not receiving credit for time served rather than a startling discovery of that fact.

In addition, Madden testified that Henderson did not contact him until the Spring or early Summer of 2008 when he telephoned and asked about an amended order and whether his credit for time served had been taken away. Madden initially thought that Henderson was suggesting that another order had been issued by the Court but was later satisfied that there was no such order. Henderson subsequently sent a letter to Madden on May 5, 2008, inquiring about this issue, but he did so almost off-handedly.[14] (Doc. 50,

_____

[13] On March 24, 2008, and April 2, 2008, Henderson filed motions with the Court complaining about the length of the sentence imposed by Judge Granade and seeking credit on his sentence for "life skills" classes and programs that he had completed in prison. (Docs. 31, 33). In another motion filed on April 2, 2008, Henderson requested that Judge Granade recommend him for participation in a "crime bill" course offered by the Alabama Department of Corrections. (Doc. 32). Petitioner did not mention the issue of receiving or being denied credit for time served.

[14] In his letter of May 5, 2008, Petitioner wrote:

Hello Mr. Madden,

How are you doing?  I hope you['re]

att. 1 at 13).  In light of the above, the Court finds that
Henderson's testimony about when he learned that he would not be
receiving credit for time served is not credible.

The Court further discredits Henderson's testimony that he
would never have agreed to dismiss the appeal if he had known that
he was not receiving credit for time served.  At no time during the

---

> well, as far as me well, I'm doing fine, just
> completed S.A.P. (Substance Abuse Program)
> like Mrs. Granade ordered.  I need to ask
> about my judgment order when you came to
> Perry Co. Corr. Facility, I withdrew my
> appeal due to the fact I was given credit for
> my time I've been locked up that paper
> clearly stated so, if I would have known it
> was gonna be changed I'd never withdrew my
> appeal, I went to U.S. Marshal custody on
> April 4, 2007 and all my time should be
> accounted for.  Could you please check on all
> this and also I'm enclosing a S.A.P. cert.
> for the records.  Could you please pass along
> to judge . . . .  [Omitted: discussion of
> another case on which he has information that
> he needs to pass along].
>
> I've done good, been in Anger Management, Domestic
> Violence, [illegible] Therapy, Value Clarification,
> Stress Management, S.A.P. now.  I'm a dorm leader for
> S.A.P.  I wish I could have had the chance for rehab
> sooner.
>
> I've done some research on stuff like
> American Disability Act (1996) about
> addiction being a disease.  Maybe you could
> help me to get back to court and fix this
> stuff about my time, but the info I got on
> the other I'll talk to you in more detail.
> Thank you for all your time and help.
> Sincerely....

(Doc. 50, att. 1 at 13-14).  Henderson wrote a more demanding
letter to Madden on August 28, 2008.  (Id. at 15).

evidentiary hearing or otherwise has Henderson denied that he was told by counsel that his appeal had little or no chance of success. (Doc. 50, att. 1 at 6). Given Madden's discussions with the United States Attorneys Office regarding the possibility of a Rule 35 motion, which Henderson does not dispute, the Court finds it implausible that he would forfeit a chance to receive as much as a fifty percent reduction in his 110 month sentence in order to pursue a frivolous appeal of the issue of credit for time served (a period of approximately one year and eight months). Henderson's testimony in this regard is also inconsistent with the fact that he was willing to forego an appeal of similar issues, *i.e.*, the denial of credit for acceptance of responsibility and 5K1.1 cooperation. The Court simply does not believe that Henderson was unwilling to do the same with regard to the denial of credit for time served.

In light of the foregoing, the Court finds, based on credibility determinations made during the evidentiary hearing, that Henderson was informed by his counsel at their meeting on October 8, 2007, that he was not receiving credit for time served. The Court further finds that, after having initially filed a Notice of Appeal, counsel discussed the advantages and disadvantages of proceeding with the appeal, including the fact that the appeal had virtually no chance of success. The Court finds that Henderson knowingly and voluntarily agreed to dismiss the appeal so as not to jeopardize his chance of receiving a Rule 35 reduction which could have resulted in as much as a fifty percent reduction in his

sentence. Henderson did not complain until months after the appeal had been dismissed and after the Government failed to move for a Rule 35 reduction for cooperation.

The evidence presented by the parties does not support a finding of ineffective assistance of counsel. It indicates only that Henderson took a reasoned, calculated risk, based on sound advice of counsel, that did not pay off as he and his counsel had hoped. In any event, counsel satisfied his obligations under Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000). Accordingly, Henderson's habeas Claim Two is due to be denied.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying

constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Id.</u> ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under <u>Barefoot [v. Estelle</u>, 463 U.S. 880, 893 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); <u>accord</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).

Neither of Henderson's claims are such as would warrant the issuance of a Certificate of Appealability. As previously established, the sentence appeal waiver addressed in Claim One was found to be valid; thus, a reasonable jurist could not conclude that this Court is in error in invoking that procedural bar with respect to Henderson's claim related to the denial of credit on his

sentence for time served.  <u>See</u> <u>Slack</u>, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").  In addition, reasonable jurists could not debate whether Henderson's Claim Two, alleging ineffective assistance of counsel for failing to pursue a direct appeal, should be resolved in a different manner or deserves to proceed further.  The recommendation that these claims be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of the claims on the record presented.  It is thus recommended that the Court deny any request for a Certificate of Appealability.

<u>CONCLUSION</u>

For the foregoing reasons, it is recommended that Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 38) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Darrell Lynn Henderson.  In addition, it is recommended that Respondent's pending Motion to Dismiss (Doc. 43) be denied as moot.  Finally, the undersigned Magistrate Judge is of the opinion that Petitioner is not entitled to issuance of a Certificate of Appealability.  It is so recommended.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this **28th** day of **May, 2010**.

                                         **/s/SONJA F. BIVINS**
                                   **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. ***Objection***.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[15] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original

---

[15] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   ***Transcript (applicable Where Proceedings Tape Recorded).*** Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.